## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| ESTEPHEN CASTELLON, | CASE NO. 1:20-CV-00940-JRK |
| Petitioner, | JUDGE JAMES R. KNEPP II |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| JAY FORSHEY, WARDEN, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

On April 30, 2020, Petitioner Estephen Castellon, a prisoner in state custody, filed a *pro se* petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). On September 23, 2020, Respondent Jay Forshey, in his official capacity as Warden of the Noble Correctional Institution, filed a Return of Writ. (ECF #10). Mr. Castellon filed a Traverse (ECF #18) and a Supplement to the Traverse (ECF #24).

The District Court has jurisdiction over the petition under § 2254(a). On May 19, 2020, pursuant to Local Civil Rule 72.2, this matter was referred to a Magistrate Judge for preparation of a Report and Recommendation. (Non-document entry of May 19, 2020). On December 8, 2020, the matter was reassigned to a new district judge. (Non-document entry of Dec. 8, 2020). On May 26, 2021, the matter was reassigned to me pursuant to General Order 2021-06. (Non-document entry of May 26, 2021).

For the reasons discussed below, I recommend the Petition be **DISMISSED** in its entirety. I further recommend the District Court **DENY** a Certificate of Appealability for all grounds for relief.

PROCEDURAL HISTORY

**Factual Findings of the Court of Appeals**

The Eighth District Court of Appeals, Cuyahoga County, Ohio, set forth the facts of this case on direct appeal. These factual findings "shall be presumed to be correct" and Mr. Castellon has the burden of rebutting this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Eighth District determined:

> [¶ 7] The victim, A.I., lived with her mother and Castellon, her mother's boyfriend. The incident giving rise to the charges occurred in August 2016, at which time A.I. was 18 years old.

> [¶ 8] A.I. testified that, on the day at issue, she arrived home from work sometime after midnight. As she was coming in the house, Castellon was leaving to go to the bar. Upon entering the house, A.I. saw her mother sleeping on the couch in the living room.

> [¶ 9] A.I. testified that her bedroom was in the attic of the house, and that it was hot in the attic during the summer months. As such, A.I. went to her mother's bedroom to sleep in her mother's bed. A.I. was awakened when she heard Castellon return home. He came into the mother's bedroom, which was where he normally slept, and, upon finding A.I. there, told her he would go sleep on the couch.

> [¶ 10] A.I. testified that she fell back asleep, but was awakened again. This time, she noticed that she was partially undressed, and that someone was engaging in sexual contact with her. She was on her stomach and the person was on her legs and she could not move. At first A.I. thought someone had broken into the house and was scared. She did not want to move because she was afraid they would hurt her mother or son who were also in the house. After a couple of minutes, she noticed that the person was being "gentle." The person then engaged in another form of sexual conduct with her. At that time, she realized that the person was Castellon – he was trying to have further sexual contact with her and was pulling her legs towards the edge of the bed. A.I. told him to stop, which he did.

[¶ 11] A.I. left the bedroom and contacted a friend, who came to the house; the two locked themselves in the attic. The next day, A.I. told her mother what had happened. She went to the police the following day and provided them with the clothes she had been wearing at the time of the incident. A police officer drove A.I. to the hospital. No rape kit was administered because it was a couple of days after the fact and A.I. had showered since the incident.

[¶ 12] A.I. testified that the following day, Castellon texted her, saying "I'm so sorry." According to A.I., at the time of the incident, her mother was 70 pounds heavier than she was, and so it would not have been easy for Castellon to confuse the two women. A.I.'s mother testified that Castellon told her that he blacked out and did not remember what had happened.

[¶ 13] The DNA analyst who examined A.I.'s clothing testified that the waistband of A.I.'s underwear contained a mixture of DNA with major and minor components. The DNA was compared to that of buccal swabs taken from Mr. Castellon and A.I.'s boyfriend; neither one's DNA could be excluded from the mixture.

[¶ 14] The investigating detective, Donald Mladek, also testified. Prior to his testimony, the state and defense agreed that he would be allowed to summarize jail calls made by Castellon without playing the actual calls or requiring the translator who translated the "Spanglish" portions of the calls to testify[1] [Court footnote: "Spanglish" commonly refers to a combination of Spanish and English.]. Defense counsel had indicated that she had listened to the calls and did not object to the transcript of the calls being admitted into evidence.

[¶ 15] In the recordings, Castellon told A.I.'s mother that he was "very drunk" at the time of the incident. He asked the mother to speak to A.I. about the incident. During the "Spanglish" portion of the recordings, Castellon was speaking with his mother and he said,

> [i]t's what confuses me is that she knew I was arriving drunk and she is in there in bed almost half – you know what I'm saying? So it's like, well, did she do that on purpose? Was it something, like I rolled over and I'm thinking it's [my girlfriend.] and then oh sh**, it's not. And I rolled back over and fell asleep, drunk asleep. You know what I mean? Cuz it didn't happen. You know what I mean? Or did. It's just real confusing to me. And that's why the story changed so many different directions. But definitely when they talk to the father and the boyfriend it got amplified. Which is understandable.

[¶ 16] Castellon's mother said "I am hoping it wasn't you. Are you sure it wasn't you? You didn't stick the pinga in there." Castellon responded, "[r]ight. Well, that was my first reaction. How's it even going to be that charge if that's not what happened. You know what I'm saying? * * * The charge itself is erroneous because that didn't happen

and she's not claiming that. So * * * that's a bad charge." His mother then asked if he was certain that it did not happen, to which Castellon replied, "[n]o. I was dizzy drunk. * * * That's what [A.I.'s mom] said." He further told his own mother, "I can picture myself realizing, oh sh**. It's not [his girlfriend] and then stopping."

[¶ 17] Detective Mladek also photographed the text messages exchanged between A.I. and her friend on the day of the incident. Further, the detective obtained Castellon's cell phone and obtained a search warrant to take a mirror image of the phone. Although it had been deleted, the detective located Castellon's text to A.I. apologizing. Detective Mladek also recovered a deleted text message to Castellon confirming a reservation for an airline flight from Cleveland to Los Angeles for three days after the incident occurred.

*State v. Castellon*, No. 106813, 2019 WL 856246, at *1-3 (Ohio Ct. App. Feb. 21, 2019) (*Castellon I*).

**State Court Conviction**

On November 1, 2016, a Cuyahoga County Grand Jury indicted Mr. Castellon on two counts of rape (in violation of Ohio Rev. Code § 2907.02(A)(2)), one count of attempted rape (in violation of Ohio Rev. Code §§ 2923.02 and 2907.02(A)(2), and one count of kidnapping (in violation of Ohio Rev. Code § 2905.01(A)(4)) with a sexual motivation specification (under Ohio Rev. Code § 2941.147(A)), all occurring on August 20, 2016. (State Court Record, ECF #10-1, PageID 82-83). On December 21, 2016, after extradition from California, Mr. Castellon, through counsel, pled not guilty to all charges. (*Id.* at PageID 85).

On December 22, 2016, the prosecutor filed a response to a discovery request and Bill of Particulars. (*Id.* at PageID 92-100). The prosecutor supplemented the response on December 27, 2016. (*Id.* at PageID 103-04). On January 3 and 12, 2017, at Mr. Castellon's request, the trial court granted continuances for discovery purposes. (*Id.* at PageID 105-06). The prosecutor supplemented the State's discovery response on January 18 and 23, 2017. (*Id.* at PageID 107-12). At a January 23, 2017 pretrial conference, the court confirmed the March 6, 2017 trial date. (*Id.* at PageID 113).

4

On February 20, 2017, Mr. Castellon, through new counsel, moved to continue the trial date and requested additional discovery. (*Id.* at PageID 114-18). On March 6, 2017, the trial court granted Mr. Castellon's request for continuance to complete discovery and reset trial for June 12. (*Id.* at PageID 120). On April 17, Mr. Castellon supplemented his discovery request. (*Id.* at PageID 121-22). On May 4, Mr. Castellon filed a motion to compel production of the requested discovery. (*Id.* at PageID 123-24). The prosecutor supplemented the discovery response on May 25. (*Id.* at PageID 126-28). At Mr. Castellon's request to complete ongoing discovery, the trial court reset the trial date for August 28. (*Id.* at PageID 129).

On July 19, 2017, new counsel entered her appearance on behalf of Mr. Castellon. (*Id.* at PageID 130). On July 28, the trial court granted Mr. Castellon's request to continue the trial date to October 16 in order to complete discovery. (*Id.* at PageID 133). On August 10, the trial court granted Mr. Castellon's request for continuance to complete discovery and the prosecutor's request to reset trial for October 30, in order to accommodate a witness's availability. (*Id.* at PageID 134). On August 17, Mr. Castellon waived his right to speedy trial and consented to the case being continued from that day to December 31, 2017. (*Id.* at PageID 135). The prosecutor supplemented the State's discovery response on September 6, October 26, November 17 and 28, and December 4. (*Id.* at PageID 139-142, 144-51). On October 27, the trial court, citing engagement in another trial, continued Mr. Castellon's trial to December 5. (*Id.* at PageID 143).

On December 4, 2017, Mr. Castellon waived a jury trial, opting instead for a bench trial. (*Id.* at PageID 152). Trial took place on December 5 and 7, 2017. (*Id.* at PageID 476). On December 6, the trial court received a letter from Mr. Castellon, postmarked November 30, in which he stated information was deleted from his cell phone after he was placed in custody, most

of which "was recovered and reorganized in a different folder," and that the chain of custody for the cell phone provided by the State was incomplete. (*Id.* at PageID 156). On December 11, 2017, the trial court found Mr. Castellon guilty of two counts of rape and one count of kidnapping with a sexual motivation specification and not guilty of attempted rape, and set sentencing for January 16, 2018. (*Id.* at PageID 160).

Between December 11, 2017 and January 16, 2018, Mr. Castellon filed, *pro se*, various notices and demands for dismissal, acquittal, or discharge from custody due to a speedy trial violation, lack of subject matter jurisdiction, insufficient service of process, deficient indictment, and ineffective assistance of counsel for failing to: (1) subpoena the technician who performed the mirror imaging of his cell phone; (2) file a motion to suppress all evidence as a result of Detective Mladek's failure to file an affidavit with his complaint; (3) subpoena the victim's boyfriend, L.G.; (4) petition the trial court for relief due to Detective Mladek obtaining his financial statements without a warrant; (5) petition the trial court for relief due to Detective Mladek bringing him from California without a time-stamped arrest warrant, which he characterizes as kidnapping; (6) subpoena the translator of the jail phone call between him and his mother and not objecting to Detective Mladek's testimony summarizing the jail phone calls as hearsay; and (7) provide him with copies of the warrant on complaint, preliminary transcripts, and affidavit of Detective Mladek. (*Id.* at PageID 161-239).

At sentencing, the trial court noted the numerous *pro se* filings and explained to Mr. Castellon that Ohio law does not allow him to represent himself while also represented by counsel, *i.e.*, hybrid representation. (ECF #10-3, PageID 776). The court denied Mr. Castellon's request to represent himself at the sentencing hearing. (*Id.* at PageID 785). Mr. Castellon's trial counsel

declined to adopt his *pro se* motions and the court struck them from the record. (*Id.* at PageID 785-86). The court sentenced Mr. Castellon to a seven-year prison term. (ECF #10-1, PageID 240).

**Direct Appeal**

Through new appellate counsel, Mr. Castellon appealed his conviction and sentence to the Eighth District, raising the following assignments of error:

I.     There was insufficient evidence produced at trial to support a finding of guilt on all counts.

II.    The appellant was found guilty against the manifest weight of the evidence.

III.   Appellant was denied the effective assistance of counsel in his trial.

IV.    The cumulative errors committed during the trial deprived the appellant of a fair trial.

V.     Appellant was denied his right to represent himself at his sentencing.

(*Id.* at PageID 253, 255). On February 19, 2019, after the State filed its brief in response (*see id.* at PageID 283), Mr. Castellon, *pro se*, filed a motion to supplement his counsel's brief with additional assignments of error, including:

VI.    Defendant was denied due process under the Fourteenth and Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution right to Crim. R. 16 discovery, prosecutorial misconduct and abuse of discretion in violation of Brady.

VII.   Appellant's constitutional right to speedy trial was violated.

VIII.  Appellant's right to confront witnesses was violated.

IX.    Ineffective assistance of trial counsel for failure to investigate missing information from defendant's cell phone, A.I.'s T-Mobile records regarding missing texts, the State's DNA evidence and call an independent expert, the hole in the chain of custody of the cell phone, and reference to "Blackmail;" failure to call the interpreter who translated the Spanglish phone call and an independent interpreter; failure to call the FBI technician regarding his cell phone; failure to call [L.G.]; and failure to present proof of address.

(*Id.* at PageID 300-13). On February 21, 2019, the Eighth District affirmed the trial court's judgment without considering the additional assignments of error in Mr. Castellon's motion to supplement, which the court later denied. (*Id.* at PageID 324-25).

Mr. Castellon did not timely file an appeal in the Supreme Court of Ohio and his filing deadline expired on Monday, April 8, 2019. *See* Ohio S.Ct.Prac.R. 7.01(A)(1)(a)(i) & 3.03(A)(1).

**Post-Conviction Petition to Vacate or Set Aside Judgment of Conviction or Sentence.**

On March 27, 2019, Mr. Castellon, *pro se*, petitioned the trial court for post-conviction relief, asserting the following claims:

1. Prosecutorial misconduct – Defendant was denied due process under the Sixth and Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution right to Crim. R. 16 discovery violation of Brady.

   Subclaims:

   a. Cell phone
   b. Body camera footage
   c. Jail calls
   d. Proof of address

2. Ineffective assistance of counsel

   Subclaims:

   a. Failure to investigate missing information from the cell phone data dump.
   b. Failure to present proof of California address
   c. Failure to investigate missing body camera footage

(*Id.* at PageID 346-51). On April 15, 2019, the trial court denied Mr. Castellon's petition. (*Id.* at PageID 393). Mr. Castellon did not timely appeal that decision to the Eighth District.

**Application to Reopen Direct Appeal**

On May 20, 2019, Mr. Castellon filed an application to reopen his direct appeal under

Ohio Rule of Appellate Procedure 26(B), claiming ineffective assistance of appellate counsel for

failure to assert the following errors on direct appeal:

    I.        Prosecutorial misconduct created tainted convictions pursuant to the use of inadmissible statements/evidence [referring to the jail calls].

    II.       Castellon was denied the right to confront his accusers or witnesses of the State.

    III.     Castellon was denied his right to a speedy trial.

(*Id.* at PageID 396-400). On September 9, 2019, the Eighth District denied Mr. Castellon's

application to reopen the appeal. (*Id.* at PageID 410-11; *see also State v. Castellon*, No. 106813, 2019

WL 4316512 (Ohio Ct. App. Sept. 9, 2019) (*Castellon II*), *appeal not allowed*, 136 N.E.3d 1513

(Ohio 2019) (table)).

**Appeal to the Supreme Court of Ohio**

On October 18, 2019, Mr. Castellon appealed the Eighth District's decisions affirming

judgment on direct appeal and denying his application to reopen the appeal to the Supreme Court

of Ohio. (*Id.* at PageID 419-20). There, he raised the following errors:

    I.        There was insufficient evidence produced at trial to support a finding of guilt on all counts

    II.       Castellon was denied the effective assistance of counsel in his trial.

    III.     The cumulative errors committed during trial deprived Castellon of a fair trial.

    IV.     Prosecutorial misconduct produced tainted evidence and a trial that was fundamentally unfair.

9

V.     Castellon was denied the right to confront his accusers or witnesses of the state of Ohio.

VI.    Castellon was denied his constitutional right to a speedy trial.

(*Id.* at PageID 422-23). On December 17, 2019, the Supreme Court of Ohio declined to accept jurisdiction. (*Id.* at PageID 469). *State v. Castellon*, 136 N.E.3d 1513 (Ohio 2019) (table).

### FEDERAL HABEAS CORPUS

Mr. Castellon filed this *pro se* petition on April 30, 2020, asserting the following grounds for relief:

**Ground One**. There was insufficient evidence to support a finding of guilt on all counts/charges.

**Colorable Support**: Albeit the correct federal touchstone was mentioned, it was unreasonably applied to the facts.

The State of Ohio produced zero evidence to suggest force or threat of force which are the necessary elements of rape. This is not the case where force or threat of force was either implied nor slight. According to A.I.'s testimony, all contact was gentle and when she said stop all contact ended immediately. A.I. testified that she does not sleep in the bed that her mother shares with the petitioner, and it was rare that she was there on this particular night when he returned from an evening drinking at the local pub. After consulting with a friend and boyfriend A.I. reported to Lakewood Police.

There was no evidence of restraint of movement. As per A.I.'s testimony she moved of her own free will.

The facts presented at trial establish a *Jackson v. Virginia* violation.

**Ground Two**. Petitioner was denied effective assistance of trial counsel.

**Colorable Support**: This claim was raised under four different subparts: (a) warrantless, manipulated cell phone data went unchallenged; (b) body camera footage was withheld due to counsel's negligence; (c) jail calls were admitted without objection; and (d) failure to admit proof of address to impeach implication of flight.

10

Data from Petitioner's cell phone was used to convict. Defense counsel admitted on record that she was aware that it was not in its original form while simultaneously squandering any investigation, and defending the State's misconduct.

Missing body camera footage was not investigated yet the police report clearly states that interviews with A.I. were recorded.

Targeted pin register was admitted without a warrant or objection by counsel.

Counsel failed to admit government record of Petitioner's whereabouts, which prejudiced his defense by implication of flight.

**Ground Three**. Cumulative errors denied petitioner a fair trial.

**Colorable Support**: The combination of evidentiary and harmless violations denied Petitioner of a fair trial. The multitude of errors, either resting on counsel's shoulders or the State's faith – as explained below, produced a trial that was fundamentally unfair. The truth-seeking process was allowed to be manipulated at will.

**Ground Four**. Prosecutorial misconduct produced tainted evidence and denied a fair trial.

**Colorable Support**: Monitoring jail calls allowed the State to present post-indictment evidence. No *Miranda* warnings, warrant, or incriminating statements came from the calls presented at trial. The State manipulated the content of the calls by presenting third party testimony as to their word-for-word account. Albeit this was done without objection, this constitutes foul play by the State pursuant to presenting false evidence.

The warrantless breach of Petitioner's cell phone, manipulation of the chain of custody and lack of testimony from the technician who supposedly performed the data dump defines misconduct by State officials.

Correspondence added to the record December 6, 2017 proves that all parties were privy to the violation pre-trial. The prosecution admitted on the record that they were aware of the issue with tainted evidence yet they placed blame on Defense counsel. The insidious version presented at trial was extremely prejudicial.

The State also denied impeachment evidence. There were body camera recordings of A.I.'s signed statement and follow-up interview with Det. Mladek. A failure to produce this "evidence" constitutes misconduct, because it inhibited Petitioner's ability to properly cross-examine A.I.

Issue lies with the elimination standard adopted, as the SANE nurse report, DNA report (lab report), and A.I.'s statement conflict.

Relying on an unjust "fugitive tag" allowed the State to avail upon tainted/false evidence, and laid the tracks for the railroad.

**Ground Five**. Petitioner was denied the right to confront accusers or State witnesses.

**Colorable Support**: Phone calls made to Petitioner's ex-girlfriend [Ms. S] and mother were used against him at trial. Because Petitioner's mother and [Ms. S] weren't indicted as co-defendants, they could only fall under the category of state witnesses. As such, the Confrontation Clause demands their presence for cross-examination.

**Ground Six**. Petitioner was denied his constitutional right to a speedy trial.

**Colorable Support**: Albeit Petitioner presented this claim in constitutional terms, the state appellate court adjudicated it in terms of state law. Therefore, it arrived at a decision clearly contrary to Federal law because under federalism, the State does not enjoy any assumed cause for delay. Under state law, a court can employ self-executing statutory exceptions.

(ECF #1).

STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Castellon's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based

12

upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). For purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a case differently than the Court has decided on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005), *cert. denied*, 549 U.S. 1047 (2006). The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Williams*, 529 U.S. at 405. A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision involves an unreasonable application of the Court's precedent if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the state prisoner's case, or if the state court either unreasonably extends a legal principle from the Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. The appropriate measure of whether a state court decision unreasonably applied

clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Id.* at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), state court factual determinations stand unless they are objectively unreasonable in light of the evidence presented in state court. *Harrington*, 562 U.S. at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18.

Under federal law, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). Comity principles also require federal courts to defer to a state's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-129 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

 The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03. To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well

14

understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing *de novo* questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007).

### PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. These barriers, including exhaustion of state remedies and procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *Daniels v. United States*, 532 U.S. 374, 381 (2001). Put simply, federal courts may review federal claims that were evaluated on the merits by a state court. Claims there were not evaluated on the merits, either because they were never presented to the state courts (*i.e.*, they are unexhausted) or because they were not properly presented to the state courts (*i.e.*, they are procedurally defaulted), are generally not cognizable on federal habeas review. *Bonnell v. Mitchel,* 301 F. Supp. 2d 698, 722 (N.D. Ohio Feb. 4, 2004).

**Exhaustion of Available State Court Remedies**. A court may not grant a petition for habeas corpus unless it appears the petitioner has exhausted available state court remedies, state corrective process is unavailable, or circumstances exist rendering such state process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b)(1). Typically, the exhaustion requirement is satisfied when the petitioner fairly presents all claims to the highest court in the state in where petitioner was convicted, giving the state a full and fair opportunity to rule on the petitioner's

claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A claim is fairly presented when both the factual and legal basis for the claim has been introduced to the state courts. *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2000). A failure to exhaust applies only where state remedies remain "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In contrast, where state court remedies are no longer available, procedural default (discussed more fully below), rather than exhaustion, applies. *Id.*

**Procedural Default**. Absent a petitioner demonstrating either cause and prejudice or that failure to review the claim would result in a fundamental miscarriage of justice (discussed below), a federal court will not consider the merits of procedurally defaulted claims. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).

There are two avenues by which a petitioner's claim may be procedurally defaulted. *Id.* First, procedural default occurs if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* To determine whether a petitioner's failure to comply with a state procedural rule bars review of his habeas claims, courts in the Sixth Circuit perform a four-pronged analysis: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

16

Second, a claim may be procedurally defaulted when the petitioner fails to raise it in state court and pursue it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848 (1991)); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). As addressed above, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.* Although the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims barring federal court review. *Williams,* 460 F.3d at 806; *Shinn v. Ramirez,* 142 S. Ct. 1718 (2022) ("When [a state prisoner] has failed to [first present that claim to the state court in accordance with state procedures], and the state court would dismiss the claim on that basis, the claim is 'procedurally defaulted.'").

In Ohio, claims must be raised on direct appeal, if possible, or res judicata bars their litigation in subsequent proceedings. *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 751 (6th Cir. 2013) (citing *State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967)). Therefore, a petitioner is not entitled to raise claims in post-conviction proceedings that could have been raised on direct appeal. *Engle v. Isaac,* 456 U.S. 107, 125 n.28 (1982). Consequently, if an Ohio petitioner fails to raise a claim on direct appeal that could have been raised at that time, the claim is procedurally defaulted. *Id.*

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider

the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749. Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005) (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452 (6th Cir. 2003) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at a developed argumentation, are deemed waived.") (quotation omitted)). A finding of cause and prejudice does not entitle a petitioner to habeas relief; it only allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted. *See Martinez v. Ryan,* 566 U.S. 1, 10 (2012); *see also Coleman*, 501 U.S. at 750.

A showing of cause for the default requires more than the mere proffer of an excuse. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Furthermore, neither a petitioner's pro se status nor his ignorance of the law and procedural filing requirements are enough to establish cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). Futility cannot constitute cause for the procedural default of a claim for failure to raise a claim on direct review if it means simply that a claim was "unacceptable to that particular court at that particular time." *Engle v. Isaac,* 456 U.S. 107, 130, n.35 (1982).

To demonstrate prejudice sufficient to overcome procedural default, a petitioner must show more than mere errors in the state trial creating a possibility of prejudice; rather, the

petitioner must show that the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. There is no prejudice where the petitioner does not show a reasonable probability of a different verdict. *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

Ineffective assistance of counsel may serve as cause to excuse a procedural default, but the ineffective assistance claim itself must not be procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Attorney neglect, ignorance, or inadvertence, however, does not constitute cause to excuse a procedural default unless counsel's performance was constitutionally deficient under the test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Coleman*, 501 U.S. at 752-755; *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).

Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495. A fundamental miscarriage of justice occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A valid actual innocence claim must be supported by new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

19

**State Law Claims Not Cognizable on Federal Habeas Review.** The District Court will not have jurisdiction over a petitioner's claims for purposes of habeas corpus review if the claims do not "challenge the legality of his custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Indeed, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process."). Moreover, merely asserting that a state law error violates the Federal Constitution is not sufficient to justify jurisdiction. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness in a criminal trial.") (internal quotation omitted); *see also Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (internal citation omitted).

Nonetheless, habeas relief may be available if an alleged error of state law subjected the petitioner to a "fundamentally unfair" criminal process. *Williams*, 460 F.3d at 816. "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (cleaned up). "A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *see also Allen v. Morris*, 845 F.2d

20

610, 614 (6th Cir. 1988) (stating that a federal habeas court does not function as an additional

state appellate court reviewing state courts' decisions on state law or procedure). The habeas

petitioner bears the burden of showing "the principle of procedure violated by the rule (and

allegedly required by due process)" is fundamental. *Bey*, 500 F.3d at 521.

DISCUSSION AND ANALYSIS

The State asserts the petition should be dismissed because Grounds Two (including

subclaims related to Mr. Castellon's cell phone, the body camera footage, and proof of address),

Four, Five, and Six are procedurally defaulted and the remaining claims in Grounds One and

Three are meritless. (ECF #10 at PageID 53, 59, 63-64, 68). I analyze each of Mr. Castellon's

grounds in turn.

## I.      Ground One

In Ground One, Mr. Castellon argues insufficient evidence supported finding him guilty.

The State does not argue that Ground One is procedurally defaulted. In his Petition, Mr.

Castellon claims the State produced no evidence to suggest force or threat of force or restraint of

movement, essential elements of rape and kidnapping, respectively. (ECF #1 at PageID 3). In his

Traverse, Mr. Castellon also claims the State misconstrued the victim's testimony in its brief on

direct appeal to indicate the victim told him to cease sexual contact multiple times and used

fabricated evidence to refresh the victim's memory. (ECF #18 at PageID 838).

Mr. Castellon asserted this claim on direct appeal and the Eighth District concluded as

follows:

> [¶ 19] The test for sufficiency requires a determination of whether the prosecution
> met its burden of production at trial. The relevant inquiry is whether, after viewing
> the evidence in a light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime proven beyond a reasonable doubt.

[¶ 20] Castellon was charged and convicted of rape and kidnapping under R.C. 2907.02(A)(2) and 2905.01(A)(4), respectively. The rape statue provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." According to Castellon, the state's evidence against him was "clearly deficient with respect to the element of purpose." "Purposely" is explained in R.C. 2901.22 as follows:

> A person acts purposely when it's the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

[¶ 21] Castellon contends that the state's evidence only demonstrated the following:

> A man entered his own bed, intoxicated and late at night, where he began gently engaging in sexual activity with the other person present, which had until that very night always been one person – his consensual romantic partner, only to discover that on this rare occasion there was someone else in the bed. Upon both parties learning of the mistake, all sexual activity halted immediately.

[¶ 22] What Castellon ignores, however, is A.I.'s testimony that Castellon entered the bedroom twice. The first time he entered the bedroom, he discovered that A.I. was in there, in the bed. He told her not to leave, that he would go sleep on the couch. The second time he entered the bedroom was when he engaged in sexual activity with A.I. On this record, the state presented sufficient evidence that Castellon purposely engaged in sexual conduct with A.I.

[¶ 23] Castellon further contends that the state failed to present sufficient evidence of force or threat of force, citing A.I.'s testimony that Castellon was "gentle." As to the use of force or threat of force required for a rape conviction, the Supreme Court of Ohio has stated that "'[f]orce need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.'" A.I. testified that when she realized she was being sexually assaulted, she was "scared to move." She also described how Castellon "pulled" her legs towards the edge of the bed in his attempt to further assault her.

[¶ 24] On this record, there was sufficient evidence of both purpose and force to support the rape convictions.

[¶ 25] In regard to the kidnapping conviction, R.C. 2905.01(A)(4) provides in relevant part that, "[n]o person, by force, threat, or deception * * * shall * * * restrain the liberty of the other person * * * [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will[.]"

[¶ 26] Castellon contends that A.I.'s "initial belief that she was in fact being restrained by virtue of some implied threat to her safety was in fact incorrect – a realization she herself came to on her own and admitted freely." Thus, according to Castellon, "[t]here was no other evidence in the record that her liberty was compromised or restrained in any way whatsoever." We disagree.

[¶ 27] A.I. testified that when she woke up the second time, Castellon was in the bedroom, he was on her legs, she could not move, and she was "scared to move." She also testified that he pulled her by her legs in an attempt to have further sexual contact with her. This evidence is sufficient to support the kidnapping conviction.

*Castellon I*, 2019 WL 856246, at *3-4. Because the state court adjudicated this claim on the merits, I review the claim under the AEDPA standard.

The due process clause requires the State prove beyond a reasonable doubt every fact necessary to constitute the charged offense. *In Re Winship*, 397 U.S. 358, 363-64 (1970). In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court established the standard for reviewing constitutional claims challenging the sufficiency of the evidence:

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.... This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Id.* at 319. Otherwise stated, a petitioner is entitled to habeas corpus relief if, based on the record evidence at trial and in the light most favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Id.* at 324. The prosecution does not have an "affirmative duty to rule out every hypothesis except that of guilty beyond a reasonable doubt." *Id.* at 326. Under this standard, "a federal habeas court faced with a record of historical facts that

23

supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*

On federal habeas review of a claim challenging the sufficiency of the evidence, reviewing courts are bound by two layers of deference. First, in determining whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the federal court does not reweigh the evidence, reevaluate the credibility of witnesses, or otherwise substitute its opinion for that of the trier of fact. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing *United States v. Hilliard*, 11 F.3d 618 (6th Cir. 1993)). Thus, even if the federal court might not agree with the trier of fact's decision to convict, it must uphold the determination if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. *Id.* The second layer of deference, required under the AEDPA, extends to the state appellate court's determination so long as it is not unreasonable. *See Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008); *see also* 28 U.S.C. § 2254(d)(2). Additionally, as described above, comity principles require federal courts to defer to a state's judgment on issues of state substantive and procedural law, *see Murray v. Carrier*, 477 U.S. 478, 491 (1986), and federal courts must accept a state court's interpretation of state law and its rules of practice, *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

Constrained by these guiding principles, I find the Eighth District did not unreasonably apply clearly established federal law. Ohio's rape statute provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2). Mr. Castellon argues A.I.'s testimony that the sexual

contact was "gentle" cuts against a finding of "force or threat of force." But the Supreme Court of Ohio has interpreted the element of "force or threat of force" to include more than just physically overwhelming conduct. Rather, as noted above, this element can be met through a showing that the victim's will was overcome by fear or duress. *See Castellon I*, 2019 WL 856246, at *4. The state court's interpretation of its own law is entitled to deference. Therefore, viewing the evidence in a light most favorable to the State, A.I.'s testimony that she was "scared to move" during the sexual contact and feared harm might come to her mother or child if she resisted, coupled with her testimony that Mr. Castellon "pulled" her legs towards the edge of the bed, is sufficient to establish the element of force or threat of force. Likewise, the Eighth District reasonably concluded the same testimony sufficiently established force and restraint, essential elements of Ohio's kidnapping statute. *See* Ohio Rev. Code § 2905.01(A)(4).

Mr. Castellon argues the Eighth District's decision was based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. (ECF #18 at PageID 837) ("In its brief on direct appeal the State of Ohio misconstrued A.I.'s testimony."). Specifically, he disagrees with the Eighth District's finding that A.I. testified Mr. Castellon was on her legs and she could not move, objecting to the inference of restraint and pointing to her testimony that she "didn't want to move." (*Id.* at PageID 832). Mr. Castellon has not shown by clear and convincing evidence that the Eighth District's decision was based on an unreasonable determination of facts. First, the Eighth District acknowledged the specifics of A.I.'s testimony:

> She was on her stomach and the person was on her legs and she could not move. At first A.I. thought someone had broken into the house and was scared. She did not want to move because she was afraid they would hurt her mother or son who were also in the house.

*Castellon I*, 2019 WL 856246, at *2. Plainly, this does not misrepresent A.I.'s testimony. If anything, it is a near duplication of what she said at trial:

> And I felt somebody on top of me. I was laying on my stomach. And at first, I notice there were like two or three fingers inside my vagina. I was scared. I thought somebody broke into my house and my son and mom was there, I didn't want to move because I didn't want them to hurt anybody.

(ECF #10-2 at PageID 525). In light of A.I.'s testimony, the Eighth District's conclusion was a reasonable determination of fact.

Mr. Castellon also argues that A.I.'s testimony is internally inconsistent and presents a physical impossibility – Mr. Castellon could not have performed both the alleged sexual conduct and forced or restrained her in the manner she testified. (*See* ECF #18 at PageID 837). Because the Eighth District reasonably concluded A.I.'s will was overcome by fear, and therefore sufficient to establish the elements of force or threat of force and restraint, Mr. Castellon's argument is unpersuasive.

The Eighth District's decision was based on a reasonable interpretation of Supreme Court precedent and rests on a reasonable determination of the facts in light of the evidence presented at trial. I recommend the District Court **DISMISS** Ground One as meritless.

## II.     Ground Two

In Ground Two, Mr. Castellon claims he received ineffective assistance of counsel at trial and asserts four subclaims: (a) trial counsel did not challenge the warrantless, manipulated data from his cell phone; (b) trial counsel was negligent in failing to obtain body camera footage from A.I.'s interview with the police; (c) trial counsel did not object to the admission of recorded jail phone calls; and (d) trial counsel did not introduce evidence to impeach the implication of flight. (ECF #1 at PageID 3-4).

### A.   Procedural Default

The State asserts subclaims (a), (b), and (d) are procedurally defaulted because Mr. Castellon failed to raise them properly on direct appeal. (ECF #10 at PageID 53). Mr. Castellon claims he diligently pursued these claims in the state courts and that those efforts preserved his claims for federal habeas review. Specifically, he points to *pro se* motions, filed after judgment but before sentencing, raising the same issues; a *pro se* motion to supplement his counsel's arguments on direct appeal; a petition for post-conviction relief; and his appeal to the Supreme Court of Ohio. (ECF #18 at PageID 845-46). For the following reasons, I find Mr. Castellon has procedurally defaulted each of these subclaims.

As to the *pro se* motions filed between judgment and sentencing, the trial court struck them from the record after trial counsel declined to adopt and argue the claims on his behalf, noting that Mr. Castellon was not entitled to represent himself while being represented by counsel. Mr. Castellon next attempted to raise these subclaims in a motion to supplement his counsel's appellate brief on direct appeal. As noted above, the Eighth District exercised its discretion to deny Mr. Castellon's motion to supplement with additional assignments of error and addressed only those claims levied by appellate counsel. Mr. Castellon asserts the Eighth District "improperly disposed of" the supplemental brief, but the Ohio Rules of Appellate Procedure specifically give the appellate court discretion to grant (or deny) leave to file supplemental briefs. *See* Ohio R. App. Proc. 16 (providing that appellate court receive an appellant's brief, an appellee's brief, and an appellant's reply brief and "[n]o further briefs may be filed except with leave of court"). Therefore, the Eighth District did not improperly deny Mr. Castellon's motion to supplement. Moreover, Mr. Castellon did not timely appeal the decision to the Supreme Court of Ohio. Even if the Eighth

27

District accepted the supplemental assignments of error, Mr. Castellon's failure to appeal to the Supreme Court of Ohio when the remedy was available to him renders his claims procedurally defaulted. *Williams*, 460 F.3d at 806.

Mr. Castellon next raised these subclaims in a petition for post-conviction relief the trial court denied as untimely. Under Ohio law, a petition for postconviction relief must be filed within 365 days after the trial transcript is filed in the court of appeals in the direct appeal. Ohio Rev. Code § 2953.21(A)(2)(a). When a trial court dismisses a timely postconviction petition, the trial court must make findings of fact and conclusions of law and shall enter judgment denying relief of the petition. *Id.* at § 2953.21(D). However, the state trial court "need not issue findings of fact and conclusions of law when it dismisses an untimely petition." *State ex rel. Kimbrough v. Greene*, 781 N.E.2d 155, 156 (Ohio 2002) (collecting cases).

Here, the trial transcript was filed in the Eighth District on March 26, 2018. (ECF #10-1 at PageID 488). Therefore, Mr. Castellon was required to file his petition for postconviction relief on or before March 26, 2019; instead, he filed it on March 27, rendering it untimely by one day. (*Id.* at PageID 471). Although the state trial court's April 15, 2019 decision did not indicate whether it denied Mr. Castellon's petition based on untimeliness, res judicata, the merits, or some other reason, I note that "Ohio trial courts are excused from filing findings of fact and conclusions of law," implying that the "petition was dismissed as untimely." *Hilliard v. Bracy*, No. 1:16-CV-2786, 2018 WL 7200439, *10 (N.D. Ohio Nov. 26, 2018), *report and recommendation adopted*, 2019 WL 425970 (N.D. Ohio Feb. 4, 2019); *see also Harrington v. Ritchter*, 562 U.S. 86, 99 (2011) (indicating that "state procedural principles" may rebut the ordinary presumption that a claim was denied on the merits).

28

The state courts have never reviewed the merits of the subclaims related to Mr. Castellon's cell phone, the body cameras, and proof of address because they were not properly presented on direct appeal. Mr. Castellon's pursuit of these subclaims through an untimely petition for postconviction relief does not resurrect them. He no longer has a state remedy available to him to address these subclaims; therefore, they are procedurally defaulted.

### B.     Cause and Prejudice and Fundamental Miscarriage of Justice

Mr. Castellon may nevertheless obtain merits review of these subclaims if he can demonstrate cause for the default and prejudice resulting therefrom, or that failure to review the claim would result in a fundamental miscarriage of justice. He meets neither standard.

Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires a petitioner to show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

To the extent Mr. Castellon asserts the Eighth District's "improper disposal" of his supplemental assignments of error on direct appeal is sufficient cause to overcome procedural default, the argument is unavailing. (ECF #18 at PageID 846). As discussed above, the Eighth District did not accept Mr. Castellon's supplemental assignments of error, nor was it required to do so.

Mr. Castellon next claims the state prison officials caused the delay in filing his petition for postconviction relief. (ECF #18 at PageID 848) ("Noble Correctional Institution delayed the shipping of one parcel for 22 days and the other for 10 days"). Pursuant to the federal prison mailbox rule, a pro se petitioner's pleading "is deemed filed when the inmate gives the document to prison officials to be mailed." *In re: Prison Litig. Reform Act*, 105 F.3d 1131, 1132 (6th Cir. 1997). Ohio, however, does not recognize the prison mailbox rule. *See Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 753 (6th Cir. 2011) (noting that under Ohio's procedural rules, a document is not deemed filed until the clerk of court's office files the document); *see also Maples v. Stegall*, 340 F.3d 433 (6th Cir. 2003) (noting the "prison mailbox rule" established by *Houston v. Lack* is not binding on state courts, in this case Michigan). Although the mailbox rule does not apply, the Sixth Circuit has explained that "[w]here a pro se prisoner attempts to deliver his petition for mailing in sufficient time for it to arrive timely in the normal course of events," that circumstance "is sufficient to excuse a procedural default based upon a late filing." *Maples*, 340 F.3d at 439; *see also Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013) (finding cause based on *Maples* where petitioner presented his application to prison officials five days before the deadline).

In *Taylor v. Sheldon*, 1:18 CV 231, 2019 WL 8509655 (N.D. Ohio Jan. 3, 2019), a petitioner's appeal was file stamped on March 14, 2017, the day after it was due to the Supreme Court of Ohio. *Id.* at *9. The district court found the petitioner demonstrated cause for the procedural default because he delivered his petition for mailing in sufficient time for delivery in the normal course of events by attaching "withdrawal slips from his prison account for postage dated March 5, 2017, and marked 'paid' on March 7, 2017 for mail to the Clerk of the Supreme Court [of Ohio] and the [county prosecutor]." *Id.* Here, Mr. Castellon's bare assertion that he

delivered his postconviction petition in time for mailing without any supporting evidence is not sufficient to show cause for the procedural default. Mr. Castellon's failure to demonstrate cause makes unnecessary any consideration of whether he can establish prejudice. *Lott v. Coyle,* 261 F.3d 594, 609 (6th Cir. 2001).

Likewise, Mr. Castellon cannot show that not reviewing these subclaims will result in a fundamental miscarriage of justice because such a claim must be supported by new reliable evidence that was not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324. Mr. Castellon has not supported his claim with any new reliable evidence that was not presented at trial.

Because Mr. Castellon did not properly present these subclaims on direct appeal, the subclaims are procedurally defaulted. Mr. Castellon has not shown cause and prejudice to overcome procedural default, nor has he established that failing to review the subclaims will result in a fundamental miscarriage of justice. I recommend the District Court **DISMISS** these subclaims in Ground Two as procedurally defaulted.

### C.    Merits Review of Subclaim (c) – Admission of Recorded Jail Calls

To establish ineffective assistance of counsel under the Sixth Amendment, a petitioner must show his counsel performed deficiently and he suffered prejudice as a result. *Strickland*, 466 U.S. at 687. To show deficiency, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under the then-existing circumstances and as judged by "prevailing professional norms." *Id.* at 687-89. Counsel's strategic choices made after thorough investigation of law and fact relevant to plausible options are virtually unchallengeable and the court must "indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance." *Id.* at 689-90. A court may not find ineffective assistance where the petitioner fails to overcome the presumption that the challenged action "might be considered sound trial strategy." *Id.* at 689.

To establish prejudice, a petitioner must prove a "reasonable probability" exists that, but for counsel's errors, the result of the criminal proceedings would have been different. *Id.* at 694. Reasonable probability requires a showing of substantial effect on the outcome of the proceedings, not just "some conceivable" effect. *Id.* at 693.

Subclaim (c) of Ground Two was reviewed on the merits in the state courts. The Eighth District adjudicated the claim as follows:

> [¶ 34] In his third assignment of error, Castellon contends that his trial counsel was ineffective. His argument revolves around the jail recordings and counsel's failure to file a pretrial motion to suppress or in limine; failure to object to the alleged hearsay statements of Detective Mladek, who was neither a party to the conversations nor prepared the transcript of the recordings; and counsel agreeing to the admission of a summary of the jail recordings, as testified to by Detective Mladek, and without the translator who translated the "Spanglish" portions of the recordings. Castellon also contends that his counsel was ineffective because, in addition to failing to subpoena the translator to testify as to his or her qualifications, counsel also did not seek an independent translation of the recordings to verify accuracy with the transcript.

> [¶ 35] To prove an allegation of ineffective assistance of counsel, Castellon must satisfy a two-prong test. First, he must establish that counsel's performance fell below an objective standard of reasonable representation.

> [¶ 36] Second, Castellon must demonstrate that he was prejudiced by counsel's performance. To show that he has been prejudiced by counsel's deficient performance, Castellon must prove that, but for counsel's errors, the result of the trial would have been different. Castellon bears the burden of proof on the issue of counsel's ineffectiveness. In Ohio, a licensed attorney is presumed competent.

> [¶ 37] Evid. R. 801 defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Subsection (D) of the rule governs statements that are not hearsay; one such statement is an "admission by party opponent." A statement is deemed an admission by party-opponent if "the statement is offered against a party

and is (a) the party's own statement, in either an individual or representative capacity * * * ."

[¶ 38] Upon review, we find that the statements were admissible under Evid. R. 801(D)(2) as an admission of party-opponent, Further, we find that counsel's decision to not seek to exclude the statements very well may have been trial strategy. Specifically, the statements could have arguably supported an "accident" or "consensual encounter" defense.

[¶ 39] In regard to counsel not subpoenaing the translator or obtaining an independent translator, we note that, in general, the decision whether to call a witness "falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." Moreover, the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel.

[¶ 40] We further note, however, that in this case, counsel's failure to call the translator limited the defense's ability on cross-examination. For example, in the transcript of the recordings there was an asterisk next to the word "dizzy" (when Castellon told his mother that he could not say for certain that he did not commit the crime because he was "dizzy drunk"). Defense counsel asked Detective Mladek what the asterisk meant; the detective stated, "I didn't make the translation so I don't know." There was also confusion as to what some dots in the text of the transcript meant.

[¶ 41] Notwithstanding that counsel may have been deficient in not subpoenaing the translator, we find that Castellon has not demonstrated that, but for this error, the result of trial would have been different, the second prong of the ineffective assistance of counsel claim. "[I]t is well settled that a rape conviction may rest solely on the victim's testimony, if believed, and that '[t]here is no requirement that a rape victim's testimony be corroborated as a condition precedent to conviction.'" Thus, A.I.'s testimony alone was sufficient to support the convictions. We therefore overrule Castellon's ineffective assistance of counsel claim.

*Castellon I*, 2019 WL 856246, at *5 (citations omitted). In short, the Eighth District found the statements were admissible as admissions by party-opponent, defense counsel's decision to not seek exclusion of the statements may have been trial strategy, and, even if counsel was deficient for not subpoenaing the translator, Mr. Castellon cannot show prejudice because A.I.'s testimony alone sufficiently supports the convictions.

Mr. Castellon asserts the Eighth District unreasonably applied the *Strickland* standard. (ECF #18 at PageID 842). He maintains that no reasonable trial strategy is apparent in counsel's failure to object to the admission of Detective Mladek's testimony about recorded jail calls. (*Id.* at PageID 843). Moreover, according to Mr. Castellon, even if this was defense counsel's trial strategy, "even deliberate trial tactics may constitute ineffective assistance of counsel if they fall 'outside the wide range of professionally competent assistance.'" (*Id.* at PageID 843) (citing *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984)). In *Martin*, where defense counsel refused to participate in trial based on counsel's inaccurate belief that participation in trial would waive pretrial motions and render denial of the motions harmless error, the Sixth Circuit determined defense counsel's strategic reasoning led him "to abandon all attempts to defend his client at trial in favor of reversal on appeal, an unreasonable tactic since the attorney was aware of a strong defense that he could present without compromising his earlier motions." *Id.* Relying on *Strickland's* guidance to "keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case," the Sixth Circuit determined, in such circumstances, counsel refusing to participate in trial is not an "exercise of reasonable professional judgment." *Id.* at 1250.

Unlike defense counsel in *Martin*, Mr. Castellon's counsel functioned as counsel by presenting an opening statement; assertively cross-examining the state's witnesses, including the victim, the victim's mother, the victim's friend, the DNA expert, and law enforcement officers; objecting to evidence presented by the prosecuting attorney; arguing in favor of a motion for acquittal under Rule 29 of the Ohio Rules of Criminal Procedure; and delivering a closing argument. (*See* ECF #10-2 at PageID 515-679; ECF #10-3 at PageID 680-770).

Mr. Castellon has not shown the Eighth District's adjudication resulted in an unreasonable application of the *Strickland* standard. The Eighth District concluded that the admission of Detective Mladek's testimony about the jail calls, determined proper under the Ohio Evidence Rules, could have arguably supported an "accident" or "consensual encounter." Defense counsel's opening statement revealed an apparent trial strategy to suggest just that: "Simple fact of the matter, [A.I.] was worried how she was going to look, worried what [Mr. Castellon] was going to say after he woke up after a night of drinking, after a night of kissing, touching, whatever." (ECF #10-2 at PageID 518-19). The jail call between Mr. Castellon and his mother, indicating Mr. Castellon was drunk that night and may have thought he was with his girlfriend (A.I.'s mother) and not A.I., is probative of an "accident" defense.

Finally, even if counsel's actions were deficient, the Eighth District noted Mr. Castellon could not establish prejudice – that, but for those errors, the result of the criminal proceeding would have been different. This is so because under Ohio law, a rape conviction may rest solely on the victim's testimony, if believed, and there is no requirement that a rape victim's testimony be corroborated to support a conviction. *Castellon I*, 2019 WL 856246, at \*5. The state's interpretation of state law is entitled to deference.

I recommend the District Court **DISMISS** this subclaim as meritless.

## III.  Ground Three

In Ground Three, Mr. Castellon alleges the accumulation of evidentiary and harmless violations denied him a fair trial in violation of due process. (ECF #1 at PageID 4). In his Traverse, he states each claim requires cumulative evaluation and it would be prejudicial to ignore the

accumulated effect. (ECF #18 at PageID 868). Mr. Castellon does not cite any caselaw supporting Ground Three.

"[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue." *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006); *see Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005). This law remains firmly established within the Sixth Circuit. *See Stoutamire v. Morgan*, No. 4:10 CV 2657, 2011 WL 6934807, at *4 (N.D. Ohio Dec. 30, 2011); *see also Billenstein v. Warden, Warren Correctional Institution*, 2016 WL 4547413, at *8 (N.D. Ohio Jul. 8, 2016), *report and recommendation adopted*, 2016 WL 4543160 (N.D. Ohio Aug. 31, 2016); *Stoddard v. Wainwright*, No. 5:20cv754, 2022 WL 3567372, at *22 (N.D. Ohio July 20, 2022), *report and recommendation adopted*, 2022 WL 3566793 (N.D. Ohio Aug. 18, 2022).

Therefore, I recommend the District Court **DISMISS** Ground Three as not cognizable on federal habeas review.

## IV.     Ground Four

In Ground Four, Mr. Castellon claims the prosecutor produced tainted evidence and denied him a fair trial. In particular, he takes issue with (a) the alleged warrantless breach of his cell phone and alleged manipulation of the phone's contents; (b) the failure to produce body camera recordings of the victim's interview with law enforcement; (c) the monitoring of jail calls and subsequent use at trial; (d) reliance on allegedly false evidence to show implication of flight; and (e) the elimination standard related to DNA evidence. (ECF #1 at PageID 4-5). I note subclaims (a), (b), (c), and (d) are based on the same facts and circumstances as those alleged in the similarly designated subclaims in Ground Two.

## A.    Procedural Default

The State asserts Mr. Castellon has procedurally defaulted subclaims (a) through (e) by not raising them on direct appeal to the Eighth District. (ECF #10 at PageID 59). The procedural posture of these subclaims largely follows that of the subclaims in Ground Two. Discussed above, the Eighth District, in its discretion, denied Mr. Castellon's motion to supplement claims made by appellate counsel on direct appeal, including subclaims (a), (b), (d), and (e). Mr. Castellon next raised subclaims (a), (b), (c), and (d) in his postconviction petition that the trial court denied as untimely. As in Ground Two, all of Mr. Castellon's subclaims are procedurally defaulted for failure to raise and pursue them through ordinary state appellate review, remedies no longer available to him.

## B.    Cause and Prejudice and Fundamental Miscarriage of Justice

Mr. Castellon may nevertheless secure a review on the merits of his claim if he establishes cause and prejudice sufficient to overcome the procedural default or that failure to review the claim will result in a fundamental miscarriage of justice. Ineffective assistance of counsel may serve as cause to excuse a procedural default, but the ineffective assistance claim itself must not be procedurally defaulted. *Edwards*, 529 U.S. at 451-52. However, attorney neglect, ignorance, or inadvertence does not constitute cause to excuse a procedural default unless counsel's performance was constitutionally deficient under *Strickland. Coleman*, 501 U.S. at 752-755; *Rust*, 17 F.3d at 161. Besides cause, a petitioner must also show actual prejudice as a result of the claimed constitutional error, *i.e.,* that the constitutional errors worked to his "actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions." *Frady,* 456 U.S. at 170. If there

37

is strong evidence of the petitioner's guilt and a lack of evidence for his claim, the actual prejudice requirement is not satisfied. *Id.* at 172; *Rust,* 17 F.3d at 161-62.

Failure of appellate counsel to raise an issue can amount to constitutionally ineffective assistance. *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004). However, "[c]ounsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Id.* at 699. If there is a reasonable probability that the defendant would have prevailed, the court must then consider "whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *Id.* at 700.

In his Application to Reopen the direct appeal, Mr. Castellon asserted a claim of ineffective assistance of appellate counsel for failing to raise as error prosecutorial misconduct for introducing "tainted evidence," in the form of jail phone calls, to secure convictions. (*Id.* at PageID 398-99). The underlying claim, prosecutorial misconduct for using the jail calls to convict him, mirrors subclaim (c). I note here Mr. Castellon did not allege ineffective assistance of appellate counsel claims for failure to bring prosecutorial misconduct subclaims (a), (b), (d), or (e) on direct appeal, nor has he alleged any other cause for the procedural default.

Claims of ineffective assistance of appellate counsel are properly raised in an application for reopening of the direct appeal. *See* Ohio R. App. Proc. 26(B); *accord James v. Brigano*, 470 F.3d 636, 640 (6th Cir. 2006). On review of Mr. Castellon's application to reopen his direct appeal, the Eighth District did not address the merits of the underlying prosecutorial misconduct subclaim (c), but determined it already considered a similar claim on direct appeal (that trial counsel was ineffective for failing to object to the admission of Detective Mladek's testimony concerning the

jail calls), restated its decision on direct appeal (that counsel was not deficient for failing to object to admission of the calls and Mr. Castellon did not show prejudice resulted from their admission), and declined to revisit the issue as barred by *res judicata. Castellon II,* 2019 WL 4316513, at *1-2. Mr. Castellon appealed the decision to the Supreme Court of Ohio but did not raise the ineffective assistance of counsel claim therein; instead, Mr. Castellon raised only the underlying claim, prosecutorial misconduct regarding the jail calls. As such, the ineffective assistance of appellate counsel claim for counsel's failing to assert prosecutorial misconduct related to the jail calls on direct appeal is procedurally defaulted. *See Carter v. Mitchell,* 693 F.3d 555, 556 (6th Cir 2012) (finding that an Ohio petitioner's ineffective assistance of appellate counsel claim was procedurally defaulted where petitioner failed to appeal the denial of a Rule 26(B) application to the Supreme Court of Ohio). Because the ineffective assistance of appellate counsel claim itself is procedurally defaulted, the claim cannot serve as cause to excuse the procedural default. *Edwards,* 529 U.S. at 451-52.

Mr. Castellon has not established cause and prejudice sufficient to excuse the procedural default, nor has he established that failing to review the subclaims will result in a fundamental miscarriage of justice. Because of Mr. Castellon's various procedural defaults, the subclaims in Ground Four have never been addressed on the merits by a state court. I recommend the District Court **DISMISS** each subclaim in Ground Four as procedurally defaulted.

## V.     Ground Five

In Ground Five, Mr. Castellon claims he was "denied the right to confront [accuser] or witness of the state," when his ex-girlfriend and mother, both present on jail calls with Mr.

Castellon summarized at trial, were not available for cross-examination as required under the Confrontation Clause. (ECF #1 at PageID 5) (cleaned up).

## A. Procedural Default

Mr. Castellon did not raise Ground Five as a claim on direct appeal; therefore, the claim is procedurally defaulted. Mr. Castellon asserts:

> The [State] invokes yet another procedural bar; claiming that Castellon failed to raise the confrontation claim on direct appeal. In the very next paragraph they concede that the Ohio Court of Appeals made a determination on the merits of the claim from his 26(b).
>
> . . .
>
> Castellon's posture is that the claim was raised to the States courts including The Ohio Supreme Court and no state courts enforced a procedural bar on the claim; keeping it open for review.

(ECF #18 at PageID 887).

Not quite. On direct appeal, Mr. Castellon did not argue that he was denied the right to confront his mother and ex-girlfriend at trial. He first raised the claim as an ineffective assistance of appellate counsel claim in his motion to reopen the direct appeal, claiming appellate counsel should have raised the claim on direct appeal. The Eighth District adjudicated the merits of the ineffective assistance claim and determined (1) the decision to confront any witness falls squarely within the realm of trial strategy and tactics, and will not be disturbed absent a demonstration of prejudice; and (2) Mr. Castellon failed to establish that prejudice resulted from the lack of cross-examination of his ex-girlfriend and his mother. *Castellon II,* 2019 WL 4316513, at *3. The Eighth District did not adjudicate the underlying claim – that he was denied the right to confront state's witnesses in violation of the Confrontation Clause. Indeed, because Mr. Castellon did not

40

properly assert a Confrontation Clause claim on direct appeal, he has procedurally defaulted the claim. No state court has addressed the merits of the claim.

**B.      Cause and Prejudice and Fundamental Miscarriage of Justice**

Mr. Castellon's claim may still be reviewed if he can establish cause and prejudice sufficient to overcome the procedural default or a fundamental miscarriage of justice. In his Application to Reopen the direct appeal, Mr. Castellon argued he was denied effective assistance of appellate counsel when appellate counsel failed to raise the Confrontation Claim on direct appeal. (ECF #10-1 at PageID 399-400). As discussed above, a claim for ineffective assistance of appellate counsel for failing to raise a claim on direct appeal may provide cause to excuse the procedural default, but the ineffective assistance claim itself must not be procedurally defaulted. *Edwards*, 529 U.S. at 451-52.

To the extent Mr. Castellon asserts his claim for ineffective assistance of appellate counsel for failure to raise a Confrontation Claim on direct appeal establishes cause for the procedural default, the argument is unpersuasive. The ineffective assistance of appellate counsel claim itself was procedurally defaulted when Mr. Castellon failed to pursue the claim through "ordinary appellate review procedures," by raising the claim to the Supreme Court of Ohio on appeal from the Eighth District's decision denying his Rule 26(B) application. *See Williams*, 460 F.3d at 806. While Mr. Castellon did appeal that decision, he did not pursue the ineffective counsel claim, and instead asserted only the underlying claim—that his right to confront witnesses was violated. Because the ineffective assistance claim was itself procedurally defaulted, Mr. Castellon has not established cause to overcome procedural default of Ground Five. No state court has ever

adjudicated Mr. Castellon's Confrontation Claim on the merits because he did not properly present the claim for review.

As noted above, Mr. Castellon cannot show that declining to review this claim will result in a fundamental miscarriage of justice without new reliable evidence not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324. Mr. Castellon has not supported his claim with new reliable evidence that was not presented at trial. Therefore, I recommend the District Court **DISMISS** Ground Five as procedurally defaulted.

### C.    Merits Review

Even if Ground Five is not procedurally defaulted, it fails on the merits. The Sixth Amendment provides that "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court has held that the Sixth Amendment Confrontation Clause serves to bar out-of-court testimonial statements unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). For Confrontation Clause purposes, the Supreme Court has further held that the term "witnesses" does not encompass all hearsay declarants, but only those who "bear testimony." *Id.* at 51 ("An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."). Where non-testimonial statements are involved, the Confrontation Clause is not implicated. *Davis v. Washington*, 547 U.S. 813, 821 (2006) ("A critical portion of [the *Crawford*] holding . . . is the phrase 'testimonial statements.' Only statements of this sort cause the declarant to be a 'witness' within the meaning of the Confrontation Clause.").

*Crawford* did not establish a definition of what constitutes a "testimonial statement" for purposes of the Confrontation Clause. Instead, it provided non-exhaustive examples of testimonial statements that include (1) *ex parte* in-court testimony or its functional equivalent; (2) extra-judicial statements contained in formalized testimonial materials (affidavits, depositions, prior testimony, confessions); and (3) statements made under such circumstances as would lead an objective witness to believe that the statement would be available for use later at trial. *Crawford*, 541 U.S. at 51-52. In *United States v. Cromer,* 389 F.3d 662 (6th Cir. 2004), the Sixth Circuit provided guidance to determine whether statements were testimonial:

> The proper inquiry, then, is whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.

*Id.* at 675. Further, in *Ohio v. Clark,* 576 U.S. 237 (2015), the Supreme Court declined to adopt a rule that statements to individuals who are not law enforcement officers are categorically outside the Sixth Amendment, declaring instead: "Statements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers." *Id.* at 249 (citing *Giles v. California*, 554 U.S. 353, 376 (2008)).

Detective Mladek testified about Mr. Castellon's conversations with his mother, the victim's mother, and his former girlfriend. (ECF #10-3 at PageID 697-701). When discussing the conversations with the victim's mother and Mr. Castellon's former girlfriend, the detective confined his testimony to Mr. Castellon's statements. (*See id.*). This testimony does not implicate the Confrontation Clause because the detective only recounted Mr. Castellon's statements from those conversations.

43

Detective Mladek read a portion of a recorded conversation between Mr. Castellon and his mother into the record, including the mother's statements. (*Id.* at PageID 699-701). These statements, however, reflect a casual conversation between a son and his mother, who questioned whether Mr. Castellon was certain that the charged conduct did not occur. The nature of the statements made by Mr. Castellon's mother do not appear to indicate that she intended to bear testimony against him. It is doubtful that his mother would anticipate that her statement would be used against him in the investigation or prosecution of the crimes. Certainly, the parties understood their conversations were recorded and could be intercepted by law enforcement officers, but this general awareness does not translate into an intent to bear testimony against the accused within the meaning of *Cromer. See Ibarra v. McDonald*, No. C 10–01145 JW (PR), 2011 WL 1585559, *5 (N.D. Cal. Apr. 26, 2011) (noting that the admonition in jail calls that they are subject to monitoring does not transform a jail telephone conversation into an examination by law enforcement.).

If the District Court concludes Mr. Castellon has not procedurally defaulted the claim in Ground Five, I recommend the District Court **DISMISS** Ground Five as meritless.

## VI.     Ground Six

In Ground Six, Mr. Castellon asserts he was denied his constitutional right to a speedy trial. (ECF #1 at PageID 5). The State asserts the claim is procedurally defaulted because Mr. Castellon failed to present the claim on direct appeal. (ECF #10 at PageID 68).

### A.      Procedural Default

The claim in Ground Six is procedurally defaulted because Mr. Castellon failed to present it on direct appeal. As above, Mr. Castellon's inclusion of the claim in a motion to supplement his

appellate counsel's brief, which the appellate court denied, does not fairly present the claim. Mr. Castellon's later appeal to the Supreme Court of Ohio included a speedy trial claim, but this appeal did not sufficiently preserve the claim for review because the Supreme Court of Ohio lacks jurisdiction to consider constitutional issues not raised or considered on direct appeal. *See* Ohio Const. art IV, § 2(B)(2); *Leroy v. Marshall*, 757 F.2d 94, 97, 99-100 (6th Cir. 1985). Therefore, Mr. Castellon has procedurally defaulted this claim.

### B. Cause and Prejudice and Fundamental Miscarriage of Justice

As with the claim in Ground Five, to the extent Mr. Castellon asserts his claim for ineffective assistance of appellate counsel for failure to raise a speedy trial claim on direct appeal establishes cause for the procedural default, the argument is unpersuasive. The ineffective assistance of appellate counsel claim itself was procedurally defaulted when Mr. Castellon failed to pursue the claim through "ordinary appellate review procedures," by raising the claim to the Supreme Court of Ohio on appeal from the Eighth District's decision denying his Rule 26(B) application. *See Williams*, 460 F.3d at 806. While Mr. Castellon did appeal that decision, he did not pursue the ineffective assistance claim, and instead asserted only the underlying claim—that his right to a speedy trial was violated. Because the ineffective assistance claim was itself procedurally defaulted, Mr. Castellon has not established cause to overcome procedural default of Ground Six.

Further, Mr. Castellon cannot show that declining to review these subclaims will result in a fundamental miscarriage of justice because such a claim must be supported by new reliable evidence not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324. Mr. Castellon has not supported his claim with new reliable evidence that was not presented at trial.

I recommend the District Court **DISMISS** Ground Six as procedurally defaulted.

**C.      Merits Review**

The Sixth Amendment guarantees a defendant the right to a speedy trial, which right is assessed in light of the length of the delay, the reasons for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006); *Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir. 2005). The Eighth District analyzed the claim and determined Mr. Castellon failed to demonstrate his right to a speedy trial was violated through the tolling provisions of Ohio Rev. Code § 2945.72 or that the tolling provisions relating to requested discovery violated his constitutional right to speedy trial:

> [¶ 16] In addition, a substantive review of the docket in Cuyahoga C.P. No. CR-16-610907 fails to demonstrate a violation of Castellon's right to a speedy trial. The Sixth Amendment to the United States Constitution and Ohio Constitution Article I, Section 10 guarantee a criminal defendant the right to a speedy trial. The guarantee is implemented in R.C. 2945.71, which provides the specific time limits within which a person must be brought to trial. The trial time tolling provisions are set forth in R.C. 2945.72. R.C. 2945.71 provides that a person against whom a felony charge is pending shall be brought to trial within 270 days after arrest. If an accused is in jail in lieu of bail solely on the pending charge, the statute mandates that each day count as three days for purposes of speedy trial calculation. If an accused is not brought to trial within the statutory time limit, the accused must be discharged. However, the R.C. 2945.71 time limits can be extended for any reason set out in R.C. 2945.72, but those extensions must be strictly construed against the state.
>
> [¶ 17] The docket in CR-16-610907, demonstrates that:
>
> 1)  11/1/16 — Castellon indicted;
>
> 2)  12/19/16 — Castellon arrested and in custody;
>
> 3)  12/21/19 — Castellon arraigned;
>
> 4)  12/27/19 — Castellon files demand for discovery;

5) 1/3/17 – pretrial had and continued to 1/12/17 at request of Castellon in order to complete discovery;

6) 1/12/17 – pretrial had and continued to 1/23/17 at request of Castellon in order to complete discovery;

7) 1/23/17 – pretrial held and trial set for 3/6/17;

8) 2/21/17 – Castellon files motion for continuance of trial and converting trial date to pretrial on 3/6/17;

9) 3/6/17 – pretrial had and continued to 3/28/17 at request of Castellon in order to complete discovery;

10) 3/28/17 – pretrial had and continued to 4/13/17 at request of Castellon in order to complete discovery;

11) 4/13/17 – pretrial had and continued to 5/3/17 at request of Castellon in order to complete discovery;

12) 4/17/17 – Castellon files supplemental discovery request;

13) 5/3/17 – pretrial had and continued to 5/16/17 at request of Castellon in order to complete discovery;

14) 5/4/17 – Castellon filed motion to compel production of supplemental discovery;

15) 5/16/17 – pretrial had and continued to 5/25/17 at request of Castellon in order to complete discovery;

16) 5/25/17 – pretrial had and continued to 6/1/17 at request of Castellon in order to complete discovery;

17) 6/1/17 – pretrial had and continued to 6/20/17 at request of Castellon in order to complete discovery;

18) 6/20/17 – pretrial had and continued to 7/20/17 at request of Castellon in order to complete discovery;

19) 7/20/17 – pretrial had and continued to 7/27/17 at request of Castellon in order to complete discovery;

20) 7/27/17 – pretrial had and continued to 8/10/17 at request of Castellon in order to complete discovery;

21) 8/10/17 – pretrial had and continued to 8/17/17 at request of Castellon in order to complete discovery;

22) 8/17/17 – Castellon waives, in writing, his right to speedy trial until 12/31/17

23) 12/5/17 – trial commenced

[¶ 18] Between 12/19/16 (date of arrest) and 8/17/17 (waiver of speedy trial), a period of 111 speedy trial days ran that were chargeable against the 270 days in which Castellon was required to be brought to trial. The time period between Castellon's arrest (12/19/16) and the initial request for discovery (12/27/16) involved 24 chargeable days (8 x 3 = 24). In addition, the time period between 1/23/17 and 2/21/17 involved 29 chargeable days (29 x 3 = 87). The remainder of the days between arrest and waiver of speedy trial were tolled as a result of the numerous requests for pretrial continuances, discovery requests, and trial continuances made by Castellon. Castellon has not demonstrated that he was denied his right to a speedy trial from the delay in his trial date. Castellon has failed to establish any prejudice through his third proposed assignment of error.

*Castellon II*, 2019 WL 4316513, at *3.

Mr. Castellon argues the state court's adjudication is contrary to federal law because the state court made its determination in terms of state law. (ECF #1 at PageID 5). Specifically, Mr. Castellon claims the appellate court "arrived at a decision clearly contrary to Federal law because under federalism, the State does not enjoy any assumed cause for delay. Under state law, a court can employ self-executing statutory schemes." (*Id.* at PageID 5-6). In *Brown v. Bobby*, 656 F.3d 325 (6th Cir. 2011), the Sixth Circuit confronted a similar argument:

Although the Ohio Court of Appeals applied a 270–day rule to determine whether the delay in bringing Brown to trial violated his right to a speedy trial, this process does not violate clearly established federal law. The Supreme Court laid out a balancing test in *Barker* for determining whether a defendant's speedy trial right has been violated, and the Ohio Court of Appeals did not explicitly address the factors outlined in *Barker*. But AEDPA does not require that a state court strictly apply a federal test, as long as the court does not apply any test or standard that is contrary to federal law. In fact, the Supreme Court has explained that the use of the word

48

"contrary," which "is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed,'" in the text of 28 U.S.C. § 2254(d) "suggests that the state court's decision must be substantially different from the relevant [Supreme Court] precedent." That is simply not the case here.

Ohio's procedure for determining whether a speedy trial violation has occurred, by applying the 270–day limit, is not "substantially different" from the *Barker* analysis, and can be seen as merely the state's method of applying that Supreme Court precedent in a more structured manner. The Supreme Court in *Barker* refused to establish a set number of days constituting a violation of the speedy trial right, stating that "such a result would require [the] Court to engage in legislative or rulemaking activity, rather than in the adjudicative process to which [it] should confine [its] efforts." However, the Court recognized that "[t]he States ... are free to prescribe a reasonable period consistent with constitutional standards," and this is exactly what Ohio has done. Moreover, Ohio courts consider the speedy trial provisions outlined in Ohio Rev. Code § 2945.71 *et seq.* to be "coextensive" with the Sixth Amendment's requirement, even stating that "the speedy trial statutes implement the constitutional guarantee of a public speedy trial." Though this fact alone is not sufficient to establish that the application of Ohio's 270–day limit is not contrary to federal law, it is instructive on this point.

Further examination of how Ohio's speedy trial statutes are applied demonstrates that they are not contrary to federal speedy trial law. Ohio Rev. Code § 2945.72 tolls the amount of time within which an accused must be brought to trial—essentially attributing the delay to the accused—in the following situations:

(A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state, by reason of his confinement in another state, or by reason of the pendency of extradition proceedings, provided that the prosecution exercises reasonable diligence to secure his availability;

(B) Any period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined, or any period during which the accused is physically incapable of standing trial;

(C) Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law;

(D) Any period of delay occasioned by the neglect or improper act of the accused;

(E)  Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;

(F)  Any period of delay necessitated by a removal or change of venue pursuant to law;

(G)  Any period during which trial is stayed pursuant to an express statutory requirement, or pursuant to an order of another court competent to issue such order;

(H)  The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion;

(I)  Any period during which an appeal filed pursuant to section 2945.67 of the Revised Code is pending.

In every other scenario, the amount of time the defendant is held counts toward his or her speedy trial clock. This provision thus takes into account many of the considerations behind the second and fourth *Barker* factors, i.e., the reason for the delay and the prejudice to the defendant. The remaining factors, the length of the delay and the defendant's assertion of his right, are likewise accounted for in Ohio's time limits for bringing an accused to trial, Ohio Rev. Code **§** 2945.71, and through its requirement that a defendant bring a motion to discharge on speedy trial grounds at trial, Ohio Rev. Code **§** 2945.73(B). In addition, the Ohio courts have recognized that "there may be situations wherein the statutes do not adequately afford the protection guaranteed by the federal and state constitutions, in which case it is [their] duty to see that an accused receives the protection of the higher authority." Thus, any time an Ohio court reviews the implementation of a speedy trial statute, it is guided not just by those provisions, but also by the dictates of the Sixth Amendment whether or not it expressly applies the factors laid out in *Barker*.

The mere fact that the Ohio Court of Appeals did not explicitly follow each of the rules laid out by the Supreme Court in applying the *Barker* factors does not mean that its determination is substantially different from the relevant Supreme Court precedent. This is especially true considering that *Barker* does not set forth a strict formula for determining if a speedy trial violation has occurred, but instead calls for the weighing of a number of factors.

*Id.* at 330-31. The Sixth Circuit concluded the petitioner had not set forth any arguments sufficient to demonstrate the court of appeals' determination was substantially different from relevant Supreme Court precedent. *Id.* at 332. Likewise, Mr. Castellon has not demonstrated the

50

Eighth District's determination in accordance with Ohio Rev. Code §§ 2945.71, *et seq.* is contrary to *Barker*.

Mr. Castellon next argues that analysis under *Barker* shows his speedy trial rights were clearly violated. (ECF #18 at PageID 889). To the extent this argument can be construed as one that the appellate court unreasonably applied federal law in finding no speedy trial violation, it fails. A deferential review of the state court's analysis shows the court did not unreasonably apply federal law. Again, the four factors to be considered are the length of the delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant. *Barker*, 407 U.S. at 530. As a balancing test, no one factor is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial"; rather, "they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533.

There is no apparent dispute the first factor, length of delay, favors Mr. Castellon. (*See* ECF #10 at PageID 71). This factor acts as a triggering mechanism for an inquiry into the remaining three factors. *Barker*, 407 U.S. at 530 ("Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."). The length of delay takes into account the duration of pretrial detention. *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005). The Sixth Circuit has recognized that a delay approaching one year can be presumed to satisfy this factor. *See United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006) (citing *Doggett v. United States*, 505 U.S. 647, 652, n.1 (1992)). Here, the delay between Mr. Castellon's arrest (December 19, 2016) and trial (December 5, 2017) approaches that mark.

In considering whether the state court's decision constituted an unreasonable application of the remaining three factors, this Court looks to whether that decision was "objectively

unreasonable," not whether it was erroneous. *See Williams*, at 409-11. In this case, the state court did not unreasonably apply federal law.

The underlying purpose of analyzing the second factor, the reasons for delay, is determining which party is more to blame for the delay. *Maples*, 427 F.3d at 1026. Here, the Eighth District attributed much of the delay to Mr. Castellon's "numerous requests for pretrial continuances, discovery requests, and trial continuances." *Castellon II*, 2019 WL 4316513, at *4. The trial court docket, outlined in the Eighth District's decision, corroborates the appellate court's evaluation of fault for the delay. This factor weighs in favor of the State. *See Brown*, 656 F.3d at 334.

The third factor, the defendant's assertion of his right to a speedy trial, "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32. Although a defendant does not waive the right to a speedy trial by failing to assert it, the degree to which the defendant has asserted the right is one of the factors to be considered in the balance. *See id*. As the Eighth District noted, Mr. Castellon did not assert his right to a speedy trial between the time of his arrest and trial. Indeed, Mr. Castellon did not assert the right until he filed his post-trial motion to dismiss for violation of his right to speedy trial. (*See* ECF #10-1 at PageID 161, 475-84). He also waived his speedy trial right on August 17, 2017 in favor of a trial date on December 31, 2017. (ECF #10 at PageID 135). This factor also favors the State.

The last *Barker* factor concerns the prejudice suffered by Mr. Castellon. A defendant must show that the delay resulted in "substantial prejudice." *United States v. White*, 985 F.2d 271, 276 (quoting *United States v. DeClue*, 899 F.2d 1465, 1470 (6th Cir. 1990)). The Supreme Court has

identified three forms of prejudice in speedy trial cases: (1) "oppressive pretrial incarceration"; (2) "anxiety and concern of the accused"; and (3) "'the possibility that [the accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." *Doggett*, 505 U.S. at 654, (quoting *Barker*, 407 U.S. at 532). Although the state court did not expressly address prejudice, Mr. Castellon has not asserted any specific form of prejudice that he suffered as a result of the delay in bringing his case to trial.

On balance, the Eighth District did not unreasonably find no violation of Mr. Castellon's speedy trial rights. Although the delay approached one year, Mr. Castellon's pretrial continuances, discovery requests, and trial continuances (supported by an explicit speedy trial waiver) were the principal cause, he did not timely assert his right to a speedy trial, and he has not shown that substantial prejudice resulted to him. The state court reasonably determined there was no violation of Mr. Castellon's right to a speedy trial.

If the District Court concludes Mr. Castellon did not procedurally default this claim, I recommend the District Court **DISMISS** Ground Six as meritless.

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has determined a petitioner's constitutional claim to be without merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S.

473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to grant a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Castellon has not made a substantial showing of the denial of any constitutional right. Jurists of reason would not find it debatable whether the six grounds for relief are valid claims of the denial of constitutional rights. Similarly, no procedural ruling appears to be in error. Therefore, I recommend the District Court not grant Mr. Castellon a Certificate of Appealability with respect to any ground.

### Conclusion and Recommendation

Mr. Castellon's Ground One and subclaim (c) of Ground Two are meritless. The remainder of Ground Two and Grounds Four, Five, and Six are procedurally defaulted. Ground Three is not cognizable on federal habeas review.

For the foregoing reasons, I recommend Mr. Castellon's habeas petition be **DISMISSED** in its entirety. I further recommend the District Court **DENY** a Certificate of Appealability for all grounds for relief.

Dated: April 28, 2023

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

<u>Objections, Review, and Appeal</u>

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).